1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THOMAS GREGORY SHEA,

                        Plaintiff,

   v.

ANDREW SAUL[1],
Acting Commissioner of Social Security,

                       Defendant.

3:18-cv-00112-RCJ-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE[2]**

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Thomas Gregory Shea's ("Shea") application for supplemental security income payments pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. Currently pending before the Court is Shea's motion for reversal or remand. (ECF No. 17.)  In this motion, Shea seeks the reversal of the administrative decision and remand for an award of benefits.  (*Id.*)  The Commissioner filed a response and cross-motion to affirm (ECF Nos. 18/19), and Shea filed a reply and response to the cross-motion (ECF Nos. 21/22).  For the reasons set forth herein, the Court recommends that Shea's motion for remand, (ECF No. 17), be granted, and the Commissioner's cross-motion to affirm, (ECF No. 18), be denied.

**I.    STANDARDS OF REVIEW**

     A.    Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1]    Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]    This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

1   the Commissioner of Social Security made after a hearing to which he was a party,

2   irrespective of the amount in controversy, may obtain a review of such decision by a civil

3   action ... brought in the district court of the United States for the judicial district in which

4   the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record,

5   a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

6   Security, with or without remanding the cause for a rehearing." *Id.*

7          The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is

8   based on proper legal standards and the findings are supported by substantial evidence

9   in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006);

10  *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any

11  fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is

12  more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d

13  1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means

14  such relevant evidence as a reasonable mind might accept as adequate to support a

15  conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842

16  (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83

17  L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

18         To determine whether substantial evidence exists, the Court must look at the

19  administrative record as a whole, weighing both the evidence that supports and

20  undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995)

21  (citation omitted). Under the substantial evidence test, a court must uphold the

22  Commissioner's findings if they are supported by inferences reasonably drawn from the

23  record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003).

24  "However, if evidence is susceptible of more than one rational interpretation, the decision

25  of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is

26  responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172

27  F.3d 1111, 1113 (9th Cir. 1999).

28

1   It is incumbent on the ALJ to make specific findings so that the court does not

2   speculate as to the basis of the findings when determining if substantial evidence supports

3   the Commissioner's decision. The ALJ's findings should be as comprehensive and

4   analytical as feasible and, where appropriate, should include a statement of subordinate

5   factual foundations on which the ultimate factual conclusions are based, so that a

6   reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d

7   1197, 1200 (9th Cir. 1990).

8   B.   Standards Applicable to Disability Evaluation Process

9   The individual seeking disability benefits bears the initial burden of proving

10   disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the

11   individual must demonstrate the "inability to engage in any substantial gainful activity by

12   reason of any medically determinable physical or mental impairment which can be

13   expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. §

14   423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in

15   support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes

16   an inability to perform his prior work, then the burden shifts to the Commissioner to show

17   that the individual can perform other substantial gainful work that exists in the national

18   economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

19   The first step requires the ALJ to determine whether the individual is currently

20   engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b).

21   SGA is defined as work activity that is both substantial and gainful; it involves doing

22   significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-

23   (b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not

24   disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

25   the second step.

26   The second step addresses whether the individual has a medically determinable

27   impairment that is severe or a combination of impairments that significantly limits him from

28   performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or

1    combination of impairments is not severe when medical and other evidence establish only

2    a slight abnormality or a combination of slight abnormalities that would have no more than

3    a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social

4    Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe

5    medically determinable impairment or combination of impairments, then a finding of not

6    disabled is made. If the individual has a severe medically determinable impairment or

7    combination of impairments, then the analysis proceeds to the third step.

8         The third step requires the ALJ to determine whether the individual's impairment or

9    combination of impairments meets or medically equals the criteria of an impairment listed

10   in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525,

11   404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of

12   impairments meets or equals the criteria of a listing and meets the duration requirement

13   (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§

14   404.1520(h), 416.920(h). If the individual's impairment or combination of impairments

15   does not meet or equal the criteria of a listing or meet the duration requirement, then the

16   analysis proceeds to the next step.

17        Prior to considering step four, the ALJ must first determine the individual's residual

18   functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-

19   by-function assessment of the individual's ability to do physical and mental work-related

20   activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making

21   this finding, the ALJ must consider all of the symptoms, including pain, and the extent to

22   which the symptoms can reasonably be accepted as consistent with the objective medical

23   evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p.

24   To the extent that objective medical evidence does not substantiate statements about the

25   intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ

26   must make a finding on the credibility of the individual's statements based on a

27   consideration of the entire case record. The ALJ must also consider opinion evidence in

28

1  accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-

2  2p, 96-5p, 96-6p, and 06-3p.

3       After making the RFC determination, the ALJ must then turn to step four in order to

4  determine whether the individual has the RFC to perform his past relevant work ("PRW").

5  20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual

6  actually performed it or as it is generally performed in the national economy within the last

7  15 years or 15 years prior to the date that disability must be established. In addition, the

8  work must have lasted long enough for the individual to learn the job and performed at

9  SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the

10  RFC to perform his past work, then a finding of not disabled is made. If the individual is

11  unable to perform any PRW or does not have any PRW, then the analysis proceeds to the

12  fifth and last step.

13       The fifth and final step requires the ALJ to determine whether the individual is able

14  to do any other work considering his RFC, age, education, and work experience. 20 C.F.R.

15  §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is

16  made. Although the individual generally continues to bear the burden of proving disability

17  at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is

18  responsible for providing evidence that demonstrates that other work exists in significant

19  numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc.*

20  *Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

21  **II.    CASE BACKGROUND**

22       A.    Procedural History

23       Shea applied for supplemental security income ("SSI") on October 9, 2015 with an

24  alleged disability onset date of June 30, 2006.  (Administrative Record ("AR") 187-92.)

25  The application was denied initially (AR 106-09), and on reconsideration.  (AR 113-15.)

26  Shea subsequently requested an administrative hearing.  (AR 116.)

27       On February 27, 2017, Shea appeared at a hearing before an Administrative Law

28  Judge ("ALJ").  (AR 35-77.)  John J. Komar, a vocational expert ("VE"), also appeared at

1    the hearing. (*Id.*)  The ALJ issued a written decision on March 14, 2017, finding that Shea

2    was not disabled because he could perform work existing in significant numbers in the

3    national economy.  (AR 16-34.)  Shea appealed, and the Appeals Council denied review

4    on June 14, 2017.  (*Id.* at 4-8.)  Accordingly, the ALJ's decision became the final decision

5    of the Commissioner.  Having exhausted all administrative remedies, Shea filed a *pro se*

6    complaint for judicial review on March 12, 2018.  (ECF No. 1-1.)

7        B.    ALJ's Decision

8        In the written decision, the ALJ followed the five-step sequential evaluation process

9    set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 16-34.) Ultimately, the ALJ disagreed

10   that Shea had been disabled from October 5, 2015, the date the application was filed,

11   through the date of the decision. (*Id.* at 28.) The ALJ held that, based on Shea's RFC,

12   age, education, and work experience, there were jobs in the national economy that he

13   could perform. (*Id.* at 27-28.)

14       In making this determination, the ALJ started at step one. Here, the ALJ found Shea

15   had not engaged in substantial gainful activity from the application date of October 5, 2015,

16   through the date of the decision. (*Id.* at 21.) At step two, the ALJ found Shea had the

17   following severe impairments: loss of visual efficiency in the right eye, loss of central visual

18   acuity in the right eye, contraction of visual field in the right eye, psychotic disorder, and

19   obsessive-compulsive disorder rule out cognitive disorder. (*Id.*) At step three, the ALJ

20   found Shea did not have an impairment or combination of impairments that either met or

21   medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart

22   P, Appx. 1; 20 C.F.R. §§ 416.920(d), 416.925, and 416.926. (*Id.* at 21-23.)

23       Next, the ALJ determined Shea had an RFC to perform medium work, as defined

24   by 20 C.F.R. § 416.967(c), except he could never climb ladders or scaffolds and never

25   crawl. (*Id.* at 23-26.)  According to the ALJ's RFC determination, Shea was capable of

26   frequently climbing stairs and ramps, balancing, stooping, kneeling, and crouching.  (*Id.*)

27   However, he could not perform activities that require binocular vision or good depth

28   perception. (*Id.*)  He could not perform commercial driving or operate a motor vehicle for

1   work, and he must avoid concentrated exposure to moving mechanical parts and

2   unprotected heights. (*Id.*) Additionally, he could understand, remember, and carry out

3   simple, routine tasks and instructions. (*Id.*)

4        The ALJ found that Shea's impairments could be expected to cause the symptoms

5   alleged, but that his statements regarding the intensity, persistence, and limiting effects of

6   those symptoms were not entirely credible. (*Id.* at 24.) In reaching this conclusion, the

7   ALJ reviewed and discussed the objective medical evidence, medical opinions, and

8   factors weighing against Shea's credibility. (*Id.* at 24-26.) The ALJ then determined that

9   Shea was unable to perform any past relevant work. (*Id.* at 26.)

10       Proceeding to step five, and relying on the testimony of the VE, the ALJ determined

11  that Shea's age, education, work experience, and RFC would allow him to perform

12  occupations existing in significant numbers in the national economy, such as: courtesy

13  clerk, kitchen helper, or hospital cleaner. (*Id.* at 27-28.) Accordingly, the ALJ held that

14  Shea had not been under a disability since the filing of his application on October 5, 2015

15  and denied his SSI claim. (*Id.* at 28.)

16  **III.   ISSUES**

17       Shea's motion for remand or reversal argues that the ALJ improperly denied him

18  SSI benefits by relying upon "fraudulent report[s] from 2 doctors who DON'T EXIST (sic)"

19  and, therefore, substantial evidence does not support the ALJ's finding of non-disability.

20  (*See* ECF No. 17.)

21  **IV.   DISCUSSION**

22       A review of the administrative record shows that Shea was receiving SSI benefits

23  from 2006 to approximately September 2014. (*See* AR at 52-53.) Shea stopped receiving

24  SSI benefits while serving a term of incarceration. (*Id.*) Shea filed the instant application

25  for SSI benefits once his incarceration ended. (*Id.*) It is unclear to the Court what exactly

26  the prior finding of disability was based upon, but in reviewing the administrative record, it

27  appears Shea's prior claim was based, at least in part, on mental impairments. (*See id.*

28  at 82, 95, 98.) Shea filed his instant application for SSI benefits based only on blindness

1   in his right eye.  (*Id.* at 187.)   Shea does not appear to acknowledge any mental

2   impairments or limitations.

3          Even though Shea applied for SSI based only on blindness, the ALJ ultimately

4   concluded that Shea also suffered from the following severe mental impairments:

5   psychotic disorder and obsessive-compulsive disorder rule out cognitive disorder.  (*Id.* at

6   21.)  In evaluating Shea's severe mental impairments, the ALJ considered only the report

7   of the State psychological consultant.  (*Id.* at 25.)  The ALJ stated the following:

8          I accorded little weight to the State psychological consultant's opinion finding
       the claimant has no severe medically determinable mental impairments (3A).
9          Although the evidence of record does not fully support the psychological
       consultative examiner's opinions in 2012 and 2014, which notably are dated
10        prior to the instant application, the examiners' [sic] opinions do document
       severe mental impairments dating back to 2012 and 2014 (4F, 5F).  In given
11        the claimant the maximum benefit of the doubt, even absent updated
       supporting medical documentation or mental health treatment, I accounted
12        for these impairments in the above residual functional capacity and accorded
       partial weight to the psychological consultative examiner's opinions.
13

14   (*Id.* at 25-26.)

15          On January 20, 2016, the initial disability determination completed by Dr. George

16   Nickles and Dr. Rosalia Pereyra opined that Shea was not disabled, but the report

17   specifically noted that "there are discovered possible mental conditions based on [Shea's]

18   prior claim," and "[t]here is no sufficient evidence to adjudicate this case… there is limited

19   information on [Shea's] current level of functioning."  (*Id.* at 83-84.)  The report also noted

20   that Shea "does not allege any mental health conditions or limitations," and "PRT found

21   [Shea] as IE as the prior Y condition could not be addressed as [Shea] feels he does not

22   have a MH condition and did not attend YCE.   Therefore the claim has insufficient

23   evidence to make an appropriate determination."  (*Id.* at 82-83.)  On August 23, 2016, the

24   disability determination on reconsideration completed by Dr. Jon Arnow and Dr. Rosalia

25   Pereyra again opined that Shea was not disabled and again noted Shea "does not allege

26   mental," and "based on the evidence and [Shea's] denial of mental limitations, mental

27   appears non-severe."  (*Id.* at 98.)   It appears no further inquiry was made into Shea's

28   mental limitations.  A review of the transcript from the hearing with the ALJ shows that

1   Shea was not asked about his mental impairments and the VE was not asked any
2   hypotheticals factoring in mental impairments. (*See id.* at 35-77.)

3   An ALJ has a duty to fully and fairly develop the record and to assure that the
4   claimant's interests are considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.
5   2001). Because Shea was proceeding *pro se*, the ALJ should have been especially
6   diligent. *Id.* "An ALJ's duty to develop the record further is triggered only when there is
7   ambiguous evidence or when the record is inadequate to allow for proper evaluation of
8   the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); see 20 C.F.R.
9   § 404.1520b (describing when agency will further develop record). "The ALJ's duty to
10  develop the record fully is also heightened where the claimant may be mentally ill and thus
11  unable to protect [his] own interests." *Tonapetyan*, 242 F.3d at 1150 (citing *Higbee v.*
12  *Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)).

13  Although Shea applied for SSI based only on his vision, the ALJ ultimately
14  concluded that Shea suffered from severe mental impairments. (*See* AR at 21.) However,
15  the record is ambiguous and inadequate as to Shea's mental impairments, especially
16  given there is no current evidence in the administrative record related to psychotic disorder
17  and/or obsessive-compulsive disorder rule out cognitive disorder. Importantly, the ALJ did
18  not attempt to develop the record despite Dr. Nickles and Dr. Pereyra opining that there
19  was insufficient evidence to adjudicate the case. The ALJ was not free to ignore the
20  concern over the lack of a complete record upon which to assess Shea's mental
21  impairment. *See Tonapetyan*, 242 F.3d at 1150 (ignoring doctor's concerns over the lack
22  of a complete record upon which to assess claimant's mental impairment constituted
23  reversible error and warranted remand for further proceedings). Because the ALJ made
24  the specific finding that Shea suffered from severe mental impairments, the ALJ had a
25  duty to develop the record as it related to those impairments, which he failed to do.

26  Accordingly, the Court finds that the ALJ failed to develop the record fully and fairly
27  with respect to Shea's possible mental impairments, including psychotic disorder and
28  obsessive-compulsive disorder rule out cognitive disorder. Therefore, it is recommended

that this case be remanded for further development of the record with regard to Shea's mental impairments, and for further appropriate proceedings in light of that additional development.  It is also recommended, that upon remand, Shea again be advised of his right to representation.

## V.    CONCLUSION

Based on the foregoing, the Court recommends that Shea's motion to remand (ECF No. 17) be granted, and that the Commissioner's cross-motion to affirm (ECF No. 18) be denied.

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Shea's motion for remand (ECF No. 17) be **GRANTED**, the Commissioner's cross-motion to affirm (ECF No. 18) be **DENIED**, and that the case be **REMANDED** to the agency for further proceedings.

**DATED**: September 25, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**

10